## Case No. 12,700.

### The SHAKSPEARE.

[4 Ben. 128.] [1]

District Court, E. D. New York. April, 1870.

COLLISION—SAILING VESSELS—PORTING IN IGNO-
RANCE—CHANGE OF COURSE IN EXTREMIS—
LOOKOUT—LIGHTS.

1. The schooner A. was off Barnegat, close-hauled on her starboard tack, heading southwest by south. The ship S. was free on her port tack, heading northeast by north, a little to the windward of the schooner. She ported her helm. The schooner starboarded hers, and the vessels came together nearly at right angles, the ship striking the schooner on the starboard side. The night was not very dark. The lights of the ship were placed abaft her mizzen rigging, so as to be obscured from the vessel approaching ahead: *Held*, that the real cause of the collision was a negligent lookout on the ship, and the wrongful porting of her helm in a moment of alarm, before the course of the schooner was known;

[Cited in The Alberta, 23 Fed. 811.]

2. The starboarding of the schooner's helm was a movement in extremis, and was not a fault;

3. The position of the ship's lights was faulty;

4. It was not a fault in the schooner to have her chief mate on the lookout, it being his watch at the time.

These were libels filed by the owners and the master of the schooner Adelaide, to recover the damages occasioned by a collision between her and the ship Shakspeare, which occurred on the night of January 4, 1870, off Barnegat. The libellants alleged that the schooner was going down the coast, with the wind west or west by south, closehauled and heading southwest by south; that the ship was seen coming up the coast with a free wind, and heading northeast by north, but to the right of the schooner, and soon after she was seen she began to change her course more to the eastward; that the schooner kept her course till the vessels were about a hundred yards apart, when her helm was put a starboard, a collision being then inevitable, and the ship struck the schooner amidships on the starboard side. On behalf of the ship, it was alleged that the ship was heading northeast by north, with the wind about west northwest; that the schooner was seen approaching and about a mile distant, and the ship's helm was at once put hard-a-port, and kept so till the collision, and the ship fell off so that, at the collision, she was heading about east by south; that as soon as the ship had begun to fall off, the red light of the schooner came in sight, no light having been visible till then, and remained so till it bore three or four points on the port bow of the ship, and distant about two hundred and fifty feet, when suddenly the schooner put her helm hard-a-starboard, and attempted to cross the ship's bows, and the collision occurred.

Wm. D. Booth, for libellants.

C. M. Da Costa, for claimant.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

BENEDICT, District Judge. I have examined, and weighed with much care, the evidence produced before me, in regard to the collision which has given rise to these actions, and feel well satisfied as to what should be the decree.

There are, undoubtedly, statements of fact made on both sides which cannot be reconciled; and when they are such as to be inconsistent with other and controlling circumstances appearing in the case. I must disregard them, and rest my decision upon what I consider to be the reliable portion of the evidence. It is noticeable that the account of the accident put forth in the answer of the ship, is plainly incorrect. The case there stated is an impossible one. If, as the answer says, and as the master of the ship positively swears, the ship's helm was put hard-a-starboard, when the schooner was nearly a mile distant, and approaching end on, the ship then going free at a speed of seven knots, and the schooner closehauled at a speed of five knots, no collision could have occurred. But the vessels did, in fact, come together at right angles, the schooner being at the time some three points off her course, and the ship six points off hers. The difficulty in the case of the ship, which the answer discloses, is not diminished when the evidence of those on board the ship is examined; on the contrary, it is found that, while attempting to prove the case set up in the answer, and sustaining it, so far as positive statement can go, the witnesses for the ship furnish corroborative evidence in support of the account which is given by those on board the schooner. Evidence given by the pilot of the ship, for instance, makes it quite apparent that the ship was to windward of the schooner; and would have passed the schooner in safety, if, before giving any order to change the course of the ship, the schooner had been carefully observed and her course ascertained.

It is also quite manifest, from what is disclosed to have taken place on board the ship, that the schooner was not seen at the distance of a mile, as the witnesses would have it believed, nor until she was very close at hand; and that the helm of the ship was then put hard aport, on the alarm given by those forward, and not upon any judgment as to the proper manœuvre to adopt under the circumstances, formed on observation of the course of the approaching vessel. Furthermore, the mode in which the vessels came together—the ship heading east by south, as she says, and striking the schooner, as she did, abaft the fore rigging—on the starboard side, at right angles, or bearing a little ahead, while it is consistent with the theory of the schooner, is inconsistent with the account given by those on the ship. These circumstances, and inconsistencies which are found in the evidence of those on board the ship, impel me to resort to the statements of those on board the schooner,

as furnishing the more reliable account of the occurrence. The account given by the mate of the schooner is clear and positive. It is supported by the man at the wheel, and to some extent by the master, who came on deck on hearing the order to starboard, and it appears to furnish the more probable explanation of what took place.

I have little hesitation, therefore, in coming to the conclusion, that the action of the schooner in starboarding was taken at the last moment, and was not a fault which should render her responsible for the collision which almost instantly ensued, but that the real cause of the collision was a negligent lookout on the ship, and an improper movement on her part, in porting before the course of the approaching vessel was known, whereby the ship was thrown across the course of the schooner, which otherwise would have passed to leeward in safety. I do not deem it necessary to add more to what I have said, except to remark that the fact that the ship had her side lights placed abaft the mizzen rigging, and so located as to be obscured from a vessel approaching ahead, was negligence, which, while it accounts for the fact that the ship's course was not discovered sooner than it was by the lookout of the schooner, would also render the ship responsible for the schooner's starboarding, when she did, if that were found to have been a wrong manoeuvre.

I should also say, that I do not consider it a fault on a vessel of the class of this schooner, to have her chief mate stationed forward on the lookout, notwithstanding it was at the time his watch on deck. Absence of the lookout from a station forward, and attention to other duties inconsistent with keeping a careful watch for approaching vessels, would, of course, be a fault; but the fact that the chief mate placed himself on the lookout, and the seaman at the wheel, when it is shown, as it is here, that he in time saw the approaching ship, and from his place forward gave his order to the wheelsman, as soon as he could determine the necessity of change, shows a proper lookout on board the schooner.

The decree must be in favor of the libellants, with an order of reference to ascertain the amount of the loss.